22-1356, Mr. Evans v. BASF. Mr. Evans, please proceed. Thank you, Your Honor. May it please the Court? The final written decision under review here presents several intersecting issues that cannot be reconciled. When this Court first remanded this issue back to the Board, it said the central issue is whether, in view of Ahling, a fazeda would have been motivated to replace either Barstats or Morrissey suppressor with the BASF catalog tetronic surfactant copolymer. And this made sense. The petition cited Ahling 26 times for the proposition that tetronic should be used as a suppressor for superfilling. In particular, when they explained things in pages, it's the appendix at 17, 21, and 27, they particularly pointed out that Ahling taught tetronic as the motivation to combine and the difference in the prior art, as well as in the claim chart where the claim elements were supposed to be found. But when the Board looked at Ahling again, it found that Ahling didn't hold up. At page 34, it found that Ahling does not expressly teach that tetronic products are suitable suppressors for a superfilling process. Well, I think, counsel, the one question I have for you is, in the petition's claim chart, it expressly cited the BASF expert declaration, quote, the use of tetronic polymers as suppressors in electroplating BASF was known before the 99 new patent. See Ahling and Barstat, end of quote. And that's at page 807 of the appendix, paragraph 22. So given that, why isn't that sufficient to conclude that the petition itself did allege that this particular limitation was disclosed by either or both of Ahling and Barstat? Because when you read it in context, it was Ahling that was supposed to use tetronic as a suppressor for superfilling, and Barstat just taught a suppressor, but it didn't teach which one, and Barstat certainly didn't teach tetronic as a suppressor for superfilling. Those words are simply not in Barstat. Okay, hold on, time out. There's two different questions here. One is like the APA type challenge that you've made where you say it wasn't proper because what the board ultimately found was outside the scope of the petition, and that's what I'm focusing on. I think what your answer focused on was whether or not the board was correct in concluding anything about one of these particular references. But my position or my question to you was, why wasn't it sufficient for the board to consider both Ahling and Barstat in the APA context? Why wasn't it sufficient for that to be considered given that the petition expressly referenced both of them with regard to this particular element? I'll grant you it didn't go into as much detail and everything as it otherwise could have, but it did reference both of them expressly. Well, I think when you change theories, and we cited, I believe it was the M&K case, when they went from two prior references to anticipation, this court found that was a change in theory that couldn't be done. It was a new argument. And here, I believe the board dropped Ahling out and just went with Barstat. Because even though nowhere did they say Barstat alone teaches Tetronic as a suppressor for superfilling, the board made that finding here at pages 17, 21, and 27 of its final written decision. And so the board switched places, didn't need Ahling anymore, found Barstat taught Tetronic as a suppressor for superfilling. And so they've changed the theory. You say they changed the theory. The board changed the theory. And whose theory did the board change? The board changed the petition's theory. The petition's theory originally was that Barstat taught a suppressor, but that Tetronic had to be used to find the suppressor for superfilling. And if you look at the petition, for example, at page 17, appendix 106, it says, a person of ordinary skill in the art using Tetronic polymers as suppressors, as taught by Ahling, would have arrived at the claim. But the institution decision itself, the very institution decision on page 323 and 324 said, Barstat discloses surfactant-type suppressor agents and, quote, also discloses particularly suitable surfactants, including, I'm inserting the word including, Tetronic. So I guess I'm just not finding persuasive at this point your argument that neither the petition nor the board was approaching this from the position that this could be found in this reference. Okay. The statement you just quoted was that it found Tetronic a particularly suitable surfactant. That does not say it's a suitable suppressor. It's certainly not a suppressor for superfilling. If I could, I'd like to... Are you trying to argue that the board didn't rely on Ahling at all and the motivation combined? What I'm trying to say is that when you look at Morrisey, it found that Ahling does not teach Tetronic as a suppressor for superfilling. That was the reason that Tetronic was cited in the petition. It didn't teach it explicitly. Apologies? It didn't teach it explicitly. That's what it said, yes. What about implicitly? I don't believe so because it also said Ahling does not link the use of Tetronic products as suppressors to a superfilling process and fails to cure the deficiency of Morrisey. Didn't the board also say that when Ahling talks about dimensions at the level of 200 nanometers, therefore it's necessarily suggesting that Tetronic is appropriate to be used as a suppressor for superfilling? It did not say that. The 200 nanometer dimension in Ahling was in the historical background where it talks about why are we using copper now instead of aluminum. Answer, because it's so narrow. Okay, so I'm misremembering. The board didn't point to the 200 nanometer dimension disclosure in Ahling? It pointed... Go ahead. I'm sorry. Well, then what did it talk about when it... What was it trying to say with regards to 200 nanometers in Ahling? It was saying that Ahling talks about 200 nanometers. And 200 nanometers is something that is known where you can use superfilling in that instance, right? Yes. Okay, and then Ahling is also talking about how Tetronic can be a suppressor. That's correct. Okay, so then you agreed when you put it all together. No. Ahling talks about using Tetronic as a suppressor in interconnect dimensions of 200 nanometers, which we both just agreed the board indicated means that we're talking about superfilling as being super. The plating bath in Ahling had two metals in it, copper and nickel. And the point there was that copper would be conductive and nickel would not. I'm just trying to get to what the board found. I mean, if you drag me all the way into the science and try to retry the case here at the pellet level, it's not going to work. You've only got 10 minutes left. I'm just trying to find out what the board said. And it sounds like my memory of what the board said is correct about Ahling. What the board found, though, is that Ahling does not teach Tetronic as a suppressor for superfilling because Ahling had a two-component bath. So where did it say that, that we reject an argument that Ahling discloses Tetronic as a suppressor for superfilling? Page 34 of the decision. Ahling does not expressly teach the Tetronic products. Page what, page 34? 34. That's expressly. But the point the board was trying to make is that implicitly that is what was going on in Ahling, and that is supported by substantial evidence. It didn't say that because on page 35 it says, thus Ahling does not link the use of Tetronic products as suppressors to a superfilling process. We have to read everything in this decision in context. I think the fairest reading is that the board is saying, it doesn't expressly say the very words about Tetronic being a suppressor in superfilling, literally. It doesn't literally say that. But when you put it all together in context, that's what it suggests. That's, I think, the fairest reading. But when you look at Morrissey, Morrissey had the same spec as Morristad. Well, that's going a little far, don't you think, to say it had the same spec? It didn't have the same spec. It didn't talk about a surfactant-type suppressor. It didn't talk about grouping Cloronic and Tetronic together. It didn't talk about Cloronic as being used as a suppressor, again, in 200 nanometers. So it's not the same specification. This court last time affirmed the board's finding on unpredictability, that if two chemistries differed in any material respect. This court also found in the original decision that the board was being inconsistent and self-contradictory when it said that Morristad doesn't teach using Tetronic as a superfiller suppressor. And that the board needed to go back and clean that up. In the context of an unpredictable art like here, OSI said that even where there was a teaching that Erlotinib was active against non-small cell lung cancer, that was the teaching. They looked at the underlying support for the statement and found it wasn't there. They found that, therefore, the teaching that Erlotinib was active and useful against non-small cell lung cancer didn't count. And, therefore, it wasn't obvious to use Erlotinib against non-small cell lung cancer because it was an unpredictable art. Just like here, this court has found very strongly that if two chemistries differ in any material respect in their properties and structures, you can't assume one will behave as the other. And in this case, you pointed out the Cloronic suppressor for superfilling in Morristad. The Cloronic does not have any nitrogen in it. Tetronic has a diamine core of nitrogen. BSS experts said that nitrogen core would be expressed in... But Morristad also teaches that Tetronic can be used in superfilling. And that is what the board found. Morristad does not teach Tetronic can be used in superfilling. It said Cloronic can be. Well, Cloronic, but it also said... It identified Tetronic and Cloronic as to be used in Morristad's invention, which is about superfilling, which is about bottom-up deposition. Morristad had conformal as well as superfilling. Right, but there's nothing in the reference that excludes the use of Tetronic in the superfilling context. And there's nothing to predict... That's what they found, and we're not going to revisit that here at this level. You've lost that on below. There's substantial evidence to support that understanding of Barstad. The OSI case, I believe... And then Barstad groups together Cloronic and Tetronic in one passage. And so, again, the problem is it's reasonable for the board to look at the overall reference and talk about how it talks about the grouping of Cloronic and Tetronic, and by extension say Tetronic can also be used as a suppressor in superfilling. Barstad put Tetronic together with Cloronic as surfactants, not as suppressors. Surfactant-like suppressant, isn't that what they said? But every suppressor is a surfactant. A surfactant is a very broad term. It's like saying a round ball. When they say surfactant-like suppressor, isn't that a suppressor that has surfactant capacity? Every suppressor has surfactant capacity. So to say that, it's like saying I want a human being who's alive. All human beings are alive. On the question of what Howling teaches, and you said it didn't teach Tetronic, calling copolymers as suppressors, what do we do at the top of page 21 in A21, the board's opinion? We agree with BASF that Howling identifies an industry demand for plating interconnects that requires superfilling and discloses various plating baddies that include Tetronic copolymers as suppressors. It's inconsistent with their conclusion at pages 33 and 34 that that's not true. And the last time we were here, such an inconsistency caused a remand. Here, they've reached I don't think you're ordering that in your briefs, are you? I did, yes. That there's inconsistency on this very point between these two things? Yes. Where? I will get that for you in my rebuttal. Okay, why don't we save the rest of your time for rebuttal? Thank you. Mr. Blythe? Yes, Your Honor. Please proceed. Good morning, and may it please the Court. Infone plainly disagrees with how the board resolved certain disputed questions of fact underlying the board's obviousness decision. Why don't you start with the APA issue? Did we raise the argument that bars that? No, your theory here of why there is invalidity. Yes, our theory, Your Honor, has been Certainly, Howling played a major, major role in the petition, right? We did. We did cite Howling a number of times. But if you look at the petition, the primary theory is that the bars that reference teaches tetronic copolymers as suppressors for superfilling. Now, the bars that reference, as we've discussed Which would lead to say that bars that anticipates? Well, I don't know that we could say anticipates What else do you need if that's the case? Well, the reason for that is there are certain technical descriptions or aspects of the tetronic suppressors that are claimed for which we need the BASF catalog to confirm. So it couldn't be a straight anticipation argument. But you could look, Your Honor, just at bars that defined that the prior art disclosed tetronic copolymers for use as a suppressor in superfilling. And that's what the board found. Right, but as soon as you get there, then the need for Howling drops out. It could. You wouldn't have to get to Howling, but the board did rely on Howling. You need the catalog for the other issues? That's correct. You need the catalog for the technical aspects of a tetronic copolymer. Are you trying to say your petition was kind of like a belts and suspenders thing? Like it was relying on both Barstad and Howling for the notion of using tectronic as a suppressor in a superfilling context? Yes, that's correct. In fact, it cites both, as the court pointed out in the claim chart, we cite both Barstad and Howling for that proposition. Barstad uses this, a prior art reference does not have to spell out everything explicitly. You would take account of the knowledge and ingenuity of a person's ordinary skill in the art. But Barstad uses this sort of factant type suppressor language to identify tetronic as a suppressor in the full context of the disclosure in Barstad. But in order to make sure that was clear, we also have the benefit of the Howling reference. And the Howling reference, as the court noted, deals with 200 nanometer interconnects, which would require superfilling. There was no dispute on that amongst the experts. And specifically says that tetronic copolymers are useful as a suppressor. And so if you start with that understanding that in Howling it says tetronic copolymers are useful, or can be used as a suppressor. And then you read Barstad where it talks about surfactant type suppressors and identifies tetronic along with pluronic. It's that sort of full context belt and suspenders approach that we presented in the petition. So what does it do with the board statement on page 35 that your colleague has pointed to? That Howling does not sufficiently link... No, that tetronic products doesn't link the use of tetronic products as suppressors in superfilling. Yes, so our argument to the board was that... No, there is no inconsistency. I believe in those arguments... One says Howling teaches this and the other says it doesn't. No, I think that the board had a consistent set of findings on Howling. So the board's findings on Howling were that Howling discloses tetronic as a suppressor and that Howling relates to superfilling by virtue of its reference to 200 nanometers. What does it mean when it says it does not link the use of? That's right. Is that magic language? Right, the board found, we disagreed with this, argued to the contrary blow, but the board did not go with us on this. But we argued that the reference the 200 nanometer interconnects required superfilling and therefore a person with a rare skill in the art would put that together and find that Howling... But you're not helping me because as I understand it, what your adversary colleague says is that at one point in the board opinion they say Howling teaches the use of tetronic products as suppressors in superfilling. And then at the end they say it doesn't teach that. I don't think that the board said in its opinion that Howling teaches tetronics as suppressors in a superfilling context. The board found three things on Howling that are consistent. Look on page 21 in that sentence that I read. We agree with. You got that sentence? Do you have the board opinion in front of you? I do. And what sentence are you referring to, Your Honor? I'm referring to, you probably weren't listening. I read it. We agree with that Howling identifies industry demand for plating and discloses plating additives that include tectronic as suppressors. Yes, that's correct. But that's not inconsistent with... It doesn't link the use of tectronic suppressors as suppressors. As suppressors for superfilling. So that's why it's consistent. But it discloses them as copolymers as suppressors. Yes. Howling discloses tetronics. There's no dispute that Howling discloses tetronic copolymers as suppressors. And Howling discusses the need for plating nanometer interconnects, which relates to superfilling. But what the board did not find, contrary to argument, but what the board did not find is that it connected... But Howling indirectly teaches that you use superfilling in at least the tiny situation. That was our argument. But the board found there wasn't a sufficient link in Howling between superfilling and tetronic as a suppressor. But Barstad did have that link. And that's why the treatment of Howling across the Barstad and Morrissey references is consistent. Because those same three principles that I reiterated are what the board found in Howling. In the final decision, what use is the board making of Howling in the combination? What the board is finding is that Howling confirms that it's... Answer my question if you could. Yes. What role does Howling play in the ultimate combination of Barstad and Howling? And where is it? Yes. The board used Howling to confirm that a tetronic copolymer is a suppressor. In the Barstad reference, the way that Barstad taught tetronic is a suppressor for superfilling is through this discussion of surfactant-type suppressants. But there is no sentence that actually says tetronic is a suppressor in Barstad. Howling includes that sentence, clarifies Barstad by saying tetronic is a suppressor. Barstad takes that a step further in its discussion of surfactant-type suppressants and confirms that a tetronic and pleuronic can be used as a suppressor in a superfilling context. Because Barstad, there's no dispute, is about superfilling. And so that's the connection. That's how Howling was used, just as a clarifying reference, essentially, as to what's disclosed in Barstad. Once we get past the APA issue and have substantial evidence on what does Barstad teach and assume that we agree with you and agree with the board that Barstad does teach what it needs to teach, then the case, to me, boils down to whether there's a reasonable expectation of success. And on that one, you're calling your adversaries arguing, well, there's a difference between tetronic and pleuronic and all the arguments that he's making. And it didn't seem to me that the board really came to grips with the distinction between nitrogen, oxygen, the two, that they have a conclusory statement that one of skill and the art, there's testimony from your expert that one of skill and the art would have found, in fact, a reasonable expectation of success. Why is the board's conclusory statement sufficient? So the board addressed both motivation to combine and reasonable expectation of success on page 21 explicitly. But I think it's important, as Judge Chin noted, that you have to read the board's entire opinion in context. Because by the time you get to the board's discussion of reasonable expectation of success... What the board's relying on is your expert's testimony at page 813, I believe, famous paragraph 39. 29, I believe. That's right. And what the board says... Used tetronic polymers as suppressor agents in super film? That's correct. When he says used, I suppose he's trying to say would have had a reasonable expectation of success in doing so. That's correct. If you look at the entire disclosure and discussion from the expert and the opinion from the board in its full context, that's made even more clear. So it's not just paragraph 29 of the expert's declaration. What the board says for... What else? What the board says for reasonable expectation of success is that the reason there was an expectation of success is because Barstead teaches tetronic polymers with super filling. And so that discussion comes after the board's previous discussion in its opinion of why Barstead... And there are about 21 different tetronic products that meet the limitation of the claim. Right. And so there's a lengthy discussion about why Barstead taught that, why Barstead taught tetronic copolymers for super filling. And as part of that discussion, there is further elaboration on the overlap and connection between tetronic and pleuronic copolymers. Like why a person where he's going there would expect them, have a reasonable expectation of success, that they would behave similarly. And that's on appendix page 14, which cites to the petitioner's briefing on remand, pages 11 and 12. That's appendix pages 675 and 676. That cites additional portions of Dr. Pound's declaration. So it's also paragraph 28, paragraphs 33 through 35. That starts on appendix page 1217 and 1221 through 1223, where Dr. Pound, BASF's expert, talks about how both tetronic and pleuronic copolymers are block copolymers of ethylene oxide and propylene oxide. The two copolymers are marketed together. Tetronic and pleuronic are referenced together, combined in each of the prior art references. Dr. Pound discussed how the two, tetronic and pleuronic, have similar properties and would be expected to behave similarly for scientific reasons that he elaborates on. So the board, in its discussion of Barstead, cites that discussion in BASF's briefing, which then cites Dr. Pound's testimony. So there's more than substantial evidence in the record to support the reasonable expectation of success. The only thing I would caution is that you do, as Judge Schindler noted, you have to read the opinion in its full context. That's the evidence that's in your favor. It's not all one-way street, because the other side in the case has got some evidence that says that the tetronic material is less likely to have the non-stick characteristic that you want, so when the glop goes down, it doesn't stick on the wall. Sure, but the board considered both sides. Why is it in this technology that the chosen suppressant, when you imagine the slot that you're trying to fill up, and you want to make certain that it fills from the bottom up so there's no air pocket, why is it that the favored suppressant has this capacity of lubricating the wall so there's not a lot of stick on the wall as the stuff goes down, but it also doesn't lubricate the bottom, so it sticks well on the bottom? Right. Why is it that the suppressant doesn't have the non-stick capacity throughout the entire trench? These compounds have been found to adhere to the sidewalls and not to the bottom. I think you also have to consider there are other additives that are at play also, a brightener or an accelerator, which are different terms for the same thing, and the brightener or accelerator, I think, sinks to the bottom is the general understanding of where the copper is being added and helps accelerate the addition of copper at the bottom while it's generally being suppressed on the sidewalls and at the top is the general understanding of how that would work. I would say that the board, further to your point, Judge Clemenger, did consider Inton's arguments on the technical issues, whether it's cationic or not, and rejected those arguments with a thorough and reasoned analysis, and that's all that's required. There's substantial evidence to support the board's conclusion. We don't know, further to your point, I'm not going to say we call that an analysis. They recognize the argument on the other side, and then they reject it summarily. They do, citing to BASF's contrary arguments, I believe. For example, one of the arguments Inton has made repeatedly is that a person wearing a school uniform would not have expected a cationic suppressor to work. A couple of points I want to make clear, because there was an issue raised in the reply brief that I think is incorrect, which is, first of all, Inton's claims in the 992 patent don't claim a cationic suppressor. Inton suggests in the reply brief, well, it would be cationic in an acid solution. Well, the claims don't include an acid requirement either, so there's nothing to suggest a cationic suppressor, and you have to consider reasonable expectation of success in light of what's actually claimed. And so there's no basis for a distinction of the claims in that regard. Okay, thank you, counsel. Thank you, Your Honor. Mr. Adams, you have some rebuttals. Thank you, Your Honor. Judge Clevenger, you asked where we explained, or we asserted, that there was a conflict in how Allen was treated. That's in our reply brief. Section 3 starts at page 13 and goes to page 15. Thank you. I just want to address a few points that just came up. This court affirmed the… I didn't remember it in the main brief, so thank you. This court affirmed the unpredictability standard when you have an unpredictable arc, which they found this to be, confirmed this to be. You have to look at structure and properties of the two chemistries. That did not happen here. Had they done that here, their expert, Dr. Pound, testified that the nitrogen core in the tetronic would be expected to absorb more strongly to the bottom of that channel than pluronic. Different structure, nitrogen in tetronic, no nitrogen in pluronic. Different outcome, stronger adhesion. Their scientist, Dr. Brockman, published a paper five years after the priority of this case where he looked at suppressors that contained nitrogen. He said those suppressors will be cationic. They will bind to that bottom floor of the substrate. They will not release, and you will get conformal plating. They won't work as a suppressor for superfilling. So five years after this patent was filed, BASF scientists were still publishing papers saying a tetronics-type molecule that has nitrogen in the suppressor will not work because it won't release. Assuming that the BASF person said that and there's some question of that, does a statement five years after the filing date matter? Aren't we supposed to look at obviousness from the time of the invention and the time of invention as the filing date? So this is post-filing data information. Dr. Pound said at the time Posita would have expected it to stick more firmly than pleronics. They were different structures that led to different properties. As far as it being cationic, the claim requires an electrolytic plating bath. You need the acid in order for it to be electrolytic to work, and their expert, Dr. Pound, testified that it would be cationic. The nitrogen would be cationic as used in the claim. Okay, Mr. Evans, I think that our time has expired and we've gone beyond it. I thank both counsel, but this case is taken under submission. Thank you, Your Honor.